IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**BILLY CHARLES AARON**                                                                                           **PETITIONER**
**ADC #110649**

v.                                              5:09-cv-00158-JMM-JJV

**LARRY NORRIS, Director,**
**Arkansas Department of Correction**                                                              **RESPONDENT**

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge James M. Moody. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence to be proffered at the hearing before the District Judge (if such a

hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
500 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the Petition for Writ of Habeas Corpus (Doc. No. 2), pursuant to 28 U.S.C. §2254, of Billy Charles Aaron, an inmate in the custody of the Varner Supermax Unit of the Arkansas Department of Correction (ADC).

## I. Procedural History

On April 15, 1997, a Judgment and Commitment Order was entered by Judge Marion Humphrey of the Circuit Court of Pulaski County, Arkansas. (Doc. No. 12, Ex. 1). The order reflects that Petitioner entered a negotiated plea of guilty to one count of rape. (*Id.*). He was sentenced to 240 months in the Arkansas Department of Correction (ADC). (*Id.*). That same month, another Judgment and Commitment Order indicated Petitioner pled *nolo contendere* to possession of cocaine and was sentenced to 36 months in prison to run concurrently with his rape sentence. (Doc. No. 12, Ex. 2).

## II. Factual History

The events giving rise to the instant habeas petition began on August 5, 2005, when ADC

inmate Billy Joe Henson sent a letter to Ray Hobbs, ADC's Chief Deputy Director, stating he had witnessed a guard allowing the beating or rape of one inmate by another inmate. (Doc. No. 12, Ex. 3). Internal Affairs Investigator Ronald Vilches interviewed Henson on August 23, 2005. Henson stated there were several inmates who had been beating up another inmate, later identified as Joel Walker, and making him do sit-ups and pushups. (*Id.*). Henson also stated that while he did not see an actual rape take place, Walker told him that he was made to go into the barracks closet and perform oral sex. (*Id.*).

Inmate Walker was interviewed in the Captain's office by Mr. Vilches about the information given by Henson. (*Id.*). Walker admitted that he did have an altercation with some inmates, but denied ever participating in any kind of homosexual activity. (*Id.*). Walker did state that Petitioner and inmate Robert Sivils did make him do sit-ups and push-ups and that Petitioner and inmate Carter were taking his commissary. (*Id.*). On August 25, 2005, Walker was again interviewed by Mr. Vilches where he requested that Walker submit to a Computerized Voice Stress Analysis, to which he agreed. (*Id.*). While he was being questioned about the assault by Ruth Clark, the CVSA examiner, Walker admitted that he had performed oral sex on inmate Lopez and that he did it because the Petitioner told him to do it. (Doc. No. 12, Ex. 4). He denied ever letting anyone force anal sex upon him. (*Id.*). However, when confronted with the indication of deception in regards to whether he had ever had anal sex with Petitioner, Walker admitted that Petitioner had forced him to submit to anal sex. (*Id.*).

Based upon the information received from Mr. Vilches, and the investigation conducted, Assistant Warden Thomas Hurst initiated and prepared a Major Disciplinary Report charging Petitioner with violations of Rules 2-1 (Aiding or abetting in the commission of any rule violation); 4-1 (Battery use of physical force on the person(s) of another); 4-3 (Rape or forced sex act); 5-3

(Assault any willful attempt or threat(s) to inflict injury upon the person of another); and 17-1 (Any act or acts defined as felonies or misdemeanor by the state of Arkansas). (Doc. No. 12, Ex. 5).

A disciplinary hearing was held on November 3, 2005. Petitioner pled not guilty to each count stating, "I didn't do it. I was denied due process. I can't properly defend myself." (Doc. No. 12, Ex. 6). Petitioner was allowed to give a statement at the hearing, essentially setting forth similar allegations which make up the majority of his habeas petition. (Doc. No. 12, Ex. 8). Petitioner was found guilty of all five charges and was sentenced to 30 days of isolation and his good time status was reduced to Class IV. (Doc. No. 12, Ex. 6).

Petitioner appealed internally to Warden Mark Cashion who affirmed the disciplinary on November 12, 2005, stating that Petitioner had "not presented any new evidence to warrant a modification or reversal of the disciplinary hearing officer's decision." (Doc. No. 12, Ex. 9). Petitioner then appealed to James Gibson, Disciplinary Hearing Administrator, who on November 21, 2005, affirmed the decision of the major disciplinary hearing officer citing that Petitioner "had not presented any new evidence to warrant a modification or reversal of the hearing officer's decision." (Doc. No. 12, Ex. 10). Petitioner filed his third and final internal appeal to Larry Norris, Director of the Arkansas Department of Correction. Mr. Norris denied Petitioner's appeal on December 16, 2005, stating that Petitioner "assaulted another inmate" and he finds "no evidence to support modification or reversal of this disciplinary." (Doc. No. 12, Ex. 11).

Petitioner then filed a 42 U.S.C. § 1983 action, challenging his disciplinary conviction. That petition was dismissed without prejudice on January 30, 2007. *Aaron v. Harris*, 5:06CV00312-WRW, 2007 WL 283128 *3 (E.D. Ark. Jan. 30, 2007). Petitioner filed a Motion for Reconsideration and for Leave to Appeal *in forma pauperis*, which was denied on March 21, 2007. *Aaron v. Harris*, 5:06CV00312-WRW, 2007 WL 889840 *1 (E.D. Ark. March 21, 2007).

On January 4, 2009, Petitioner filed a *pro se* § 2254 Habeas Corpus Petition in the Circuit Court of Lincoln County, Arkansas. (Doc. No. 12, Ex. 12). The court denied the petition on March 18, 2009, citing a lack of jurisdiction. (*Id.*). On April 21, 2009, Petitioner filed another § 1983 action, again alleging he was improperly convicted of a disciplinary violation involving a claim of rape and assault of a fellow inmate. *Aaron v. Harris*, No. 5:09-cv-00118-BSM-JJV (E.D. Ark.). He challenged the factual basis of the conviction, as well as the failure to provide him with DNA testing and the appointment of counsel. (*Id.*). He sought compensatory and punitive damages, expungement of the disciplinary conviction, release from administrative segregation, "reinstate[ment of] parole and immediate release from prison," and for the Court to "set aside" the Prison Rape Elimination Act of 2003, 42 U.S.C. § 15601, *et seq.* (*Id.*). That case is still pending before this Court.

**III.    Analysis**

   **A.    Procedural Bar Arguments**

Respondent raises several procedural bar arguments; first, that the instant habeas petition should be dismissed as untimely. Under 28 U.S.C. § 2244(d)(1), a one-year limitations period applies to any federal habeas petition filed by a state prisoner. 28 U.S.C. § 2244(d)(1). The United States Courts of Appeals for the Second, Fourth, Fifth, Ninth, Tenth and Eleventh Circuits have all held that this limitations period applies to § 2254 habeas petitions challenging administrative decisions. *Brown v. Barrow,* 512 F.3d 1304, 1307 n. 1 (11th Cir. 2008); *Dulworth v. Evans,* 442 F.3d 1265, 1267-68 (10th Cir. 2006); *Shelby v. Bartlett,* 391 F.3d 1061, 1063-65 (9th Cir. 2004); *Wade v. Robinson,* 327 F.3d 328, 330-31 (4th Cir. 2003); *Cook v. New York State Div. of Parole,* 321 F.3d 274, 279-80 (2nd Cir. 2003); *Kimbrell v. Cockrell,* 311 F.3d 361, 363 (5th Cir. 2002). The United States Court of Appeals for the Eighth Circuit has yet to address the issue. *See Burgie v.*

*Norris*, 5:08-cv-00089-BSM-JTR, 2009 WL 361173 *2 (E.D. Ark., Feb. 13, 2009)(surveying the relevant law)*; Neugebauer v. Fox,* No. 1:08-cv-015, 2008 WL 824272, *2 (D.N.D. Mar. 10, 2008)(surveying the relevant law). Only the Seventh Circuit Court of Appeals has held to the contrary.  *See also Cox v. McBride*, 279 F.3d 492, 494-94 (7th Cir. 2002).[1] In line with the overwhelming majority of the United States Courts of Appeal, this Court agrees that the limitations period applies to § 2254 petitions challenging administrative decisions.

The consensus amongst the Circuits is that the one-year period runs "from the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" under § 2244(d)(1)(D), which is the final administrative determination of the relevant institutional body.  *Brown,* 512 F.3d at 1307 n. 1; *Dulworth,* 442 F.3d at 1268; *Shelby,* 391 F.3d at 1066; *Redd v. McGrath,* 343 F.3d 1077, 1082 (9th Cir. 2003); *Wade,* 327 F.3d at 333; *Cook,* 321 F.3d at 280-81.

Here, the ADC's administrative decision became final on December 16, 2006.  (Doc. No. 12, Ex. 11).  Therefore, the one-year limitations period ran from December 17, 2006 until December 17, 2007.[2] However, Petitioner did not file his state habeas petition until January 4, 2009.  On this date, 749 days later, the clock stopped.  Petitioner was well over one year beyond the applicable one-year limitations period.  Respondent contends the period did not toll until Petitioner filed his federal § 2254 petition.  However, the time during which a properly filed application for

---

[1] In *McBride,* the Seventh Circuit distinguished itself from the Eighth Circuit in its interpretation of § 2244.  *McBride*, 279 F.3d at 494 ("Courts elsewhere do not avert to the subject. For example, the Eighth Circuit has treated prison disciplinary boards as courts with no explanation. In light of our cases, we are unwilling to interpret the word more broadly in section 2244(d)(1))."

[2] *See Shelby*, 391 F.3d at 1066 (limitations period begins running the day after denial of administrative appeal); *Redd*, 343 F.3d at 1082 (same).

state post-conviction or other collateral review is pending is not counted toward the one-year limitations period. 28 U.S.C. § 2244(d)(2). Therefore, the period tolled when Petitioner filed his original habeas claim in state court. However, in this case, it makes no difference whether the limitations period is calculated from December 17, 2006, to the date the petition was filed with the state court on January 4, 2009 (749 days), or when Petitioner filed the instant § 2254 petition on June 10, 2009 (906 days). Even if the Court were to give Petitioner every benefit of possible doubt, his petition would still be time-barred.

If the Court were to determine that Petitioner's § 2254 petition was timely filed, it would still fail on the merits. While Respondent raised several meritorious procedural bar issues in this case, it is more judicially efficient and fair to Petitioner to reach the merits than to untangle the complexities of the procedural bar issues. "Although the procedural bar issue should ordinarily be resolved first, judicial economy sometimes dictates reaching the merits if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999), *cert. denied*, 528 U.S. 846 (1999). "The simplest way to decide a case is often the best." *Chambers v. Bowersox*, 157 F.3d 560, 564 n.4 (8th Cir. 1998).

### B.     Merits Argument

Petitioner contends his due process rights were violated for a myriad of reasons, including failure to conduct a DNA test, failure to appoint counsel, refusal to call witnesses, and placing him in administrative segregation. (Doc. No. 3). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Ragan v. Lynch*, 113 F.3d 875, 876 (8th Cir. 1997) (citations omitted). "Protected liberty interests under the Fourteenth Amendment may arise from the Due Process Clause itself or from State laws." *Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668 (8th Cir. 1996). "A liberty interest inherent in the Due Process clause

arises when a person has substantial, albeit conditional, freedom such as when he is on probation or parole." *Id*. Liberty interests arising from state law are limited to freedom from restraint which "imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life," or to actions which "inevitably affect the duration of [a prisoner's] sentence." *Sandin v. Conner,* 515 U.S. 472, 484, 487 (1995) (emphasis added).

Petitioner's sentence resulted in thirty days in isolation and a good-time class reduction to Class IV. Therefore, Petitioner must prove he has a liberty interest in his segregated status and his class status. This Petitioner has failed to do. Administrative or disciplinary segregation, particularly of brief duration as imposed here, is not the kind of "atypical and significant" deprivation that creates a liberty interest under *Sandin. Sandin,* 515 U.S. at 485-86 (thirty days of disciplinary segregation "did not work a major disruption in [a prisoner's] environment"); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (thirty-seven days in punitive segregation); *Portley-El,* 288 F.3d 1063,1065-66 (8th Cir. 2002) (administrative and disciplinary segregation, and reclassification); *Kennedy v. Blankenship,* 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) ("transfer from administrative segregation to punitive isolation [is] not a dramatic departure from the basic conditions of [an inmate's] confinement and thus does not constitute the type of atypical significant deprivation in which a state might conceivably create a liberty interest").

Furthermore, Petitioner does not have a constitutional right or liberty interest in a particular classification level. *See Sanders v. Norris,* Case No. 05-2398, 2005 WL 2861952 (8th Cir. Nov.2, 2005)(holding that an inmate does not have a constitutional right to a particular classification); *Hartsfield v. Dep't of Corr.,* 107 Fed. Appx. 695, 696 (8th Cir. 2003)(unpub. *per curiam* )(no liberty interests in particular classification); *Carney v. Houston,* 33 F.3d 893, 894 (8th Cir. 1994)(stating that "[t]he Due Process Clause does not itself create a liberty interest in a particular prison

classification"); *Madewell v. Roberts,* 909 F.2d 1203, 1207 (8th Cir. 1990) (ADC inmate has no right to consideration of Class I status); and *Strickland v. Dyer,* 628 F.Supp. 180, 181 (E.D. Ark. 1986)(because Arkansas law does not protect a prisoner's right to any particular classification and there is no federally protected right regarding classification, ADC prisoner could not prevail on claim that he was deprived of due process due to disciplinary penalty of two-step class reduction).

Petitioner's demotion to Class IV does not give rise to a protected liberty interest under federal or state law. Petitioner simply lost the opportunity to earn further good time credits. Nevertheless, even when good-time credits are awarded, they only affect an inmate's transfer eligibility date, they do not reduce his sentence. *See* Ark. Code Ann. § 12-29-201(d) (2003). Therefore, Petitioner cannot argue that being demoted to Class IV status affected the duration of his sentence and created a liberty interest.

However, even if this Court determines that Petitioner's disciplinary conviction created a liberty interest, he was afforded the due process required by the law. To comport with due process where a protected liberty interest exists in connection with a prison disciplinary proceeding, a prisoner must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present a defense; and (3) a written statement of the evidence relied upon by the fact-finder and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

Due process also requires that the record contain "some evidence" to support the prison disciplinary decision. *Superintendent v. Hill,* 472 U.S. 445, 455-56 (1985). The relevant question "is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455 (emphasis added). This "some evidence" rule allows the federal courts to defer to the judgment of prison officials in maintaining discipline in their institutions while

meeting constitutional requirements. *Id.* at 456. This limited review by federal courts does not require examination of the entire record, independent assessment of credibility of witnesses, or weighing of the evidence. *Id.* at 455. Prison officials can permissibly rely on conduct violation reports to find inmates guilty of disciplinary infractions. *Id.* at 456; *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008); *Hrbek v. Nix,* 12 F.3d 777, 781 (8th Cir. 1993). A report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as "some evidence" upon which to base a prison disciplinary decision, if the violation is found by an impartial decision-maker. *Hartsfield,* 511 F.3d at 831.

Here, the disciplinary records reflects that Petitioner was notified of the disciplinary charges on October 31, 2005, three days before his hearing date on November 3. (Doc. No. 12, Exs. 5, 6). At the disciplinary hearing on November 3, 2005, Petitioner pleaded not guilty to the charges and was allowed to make a statement. (Doc. No. 12, Ex. 8 (audio file on CD)). Petitioner was never refused the opportunity to present witness statements; he only chose to read his own. (Doc. No. 12, Ex. 8).[3] The Hearing Officer found Petitioner guilty of all five violations (Doc. No. 12, Ex. 6). The Hearing Officer relied on staff reports and the accepted statements to find Petitioner guilty. (*Id.*). Petitioner fully exhausted all levels of the administrative appeal process, and was denied each time. (Doc. No. 12, Exs. 9-11). This was adequate to comport with the requirements of *Wolff* and *Hill* and we find no due process violation in Petitioner's disciplinary hearing.

With regard to Petitioner's continuing allegation that he is entitled to DNA evidence, the United States Supreme Court recently held that there is no constitutional right to access, post-

---

[3]Petitioner attaches a witness statement by inmate William Lopez to his Brief in Support of his habeas petition. (Doc. No. 3, Ex. 9). However, it appears that this statement was not taken until November 30, 2005, almost one month after Petitioner's disciplinary hearing was held. Therefore, it was Petitioner's own fault that the statement was not taken until one month later and in no way reflects a refusal by the BOP to consider the statement.

conviction, DNA evidence that might exonerate a convicted person. *District Attorney's Office for the Third Judicial District v. Osborne*, 129 S. Ct. 2308 (2009). The Court reasoned that legislatures and state courts are "shaping policy" for addressing requests for such access, and "[t]here is no reason to constitutionalize the issue." *Id*. at 2312. As Respondent correctly states, "prison disciplinaries are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556 (citations omitted). Therefore, Petitioner is not entitled to DNA evidence.

After carefully scrutinizing Petitioner's claims, the Court concludes he was afforded the due process as required by the law and his claims are without merit. Furthermore, Petitioner's claims are time barred.

Accordingly, it is therefore recommended that Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice and the requested relief be DENIED.

DATED this 17th day of November, 2009.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE